IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JULIÁN OLIVARES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV713 |
| UNIVERSITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Margaret Greer ("Professor Greer") and Elizabeth Rhodes' ("Professor Rhodes") (collectively "Defendants") Opposed Motion to Compel Interrogatory Responses from Plaintiff Julián Olivares ("Professor Olivares" and "Plaintiff"). (Docket Entry 59.) Plaintiff has filed responses to this motion. (Docket Entries 63, 96.) For the reasons stated herein, the Court will deny Defendants' motion.

## I. BACKGROUND[1]

Professor Olivares filed this Complaint alleging copyright infringement and related claims against Professors Greer and Rhodes (and other named Defendants) for an alleged infringement of a book entitled "Novelas amorosas y ejemplares, by María de Zayas y Sotomayor," which was created by Professor Olivares. (*See* Third Am. Complaint ¶ 8, Docket Entry 27.) Professor Olivares alleges that his book "is a new and different version

---

[1] This case was originally filed in the Eastern District of Texas and transferred to the Middle District of North Carolina. (*See* Docket Entry 72.) At the time of the transfer, several motions were pending, including the matter now before the Court.

1

of Novelas amorosas y ejemplares, contains a large amount of material wholly original with Plaintiff, and is copyrightable subject matter under the laws of the United States." (*Id.*) Professor Olivares alleges that Professors Greer and Rhodes published the book "María de Zayas y Sotomayor, Exemplary Tales of Love and Tales of Disillusion," which "included original, copyrighted material from Plaintiff's Copyrighted Text, including at least nine translated narratives from Plaintiff's Copyrighted Text." (*Id.* ¶ 12.) Discovery commenced in this matter, and on March 4, 2015, Professor Greer served upon Professor Olivares interrogatories on several topics which Professor Olivares specifically lodged objections to Interrogatories 2 and 3. (*See* Ex. 1, Docket Entry 59-2.) Professor Olivares subsequently provided amended responses to Interrogatories 2 and 3. (*See* Ex. 2, Docket Entry 59-3.) Dissatisfied with Plaintiff's responses, Professors Greer and Rhodes conducted an unsuccessful second telephone conference, and subsequently filed the pending motion to compel complete interrogatory responses from Professors Olivares. On December 4, 2015, a hearing was held in this matter. (Minute Entry dated 12/4/15.)

## II. DISCUSSION

As a general rule, Federal Rule 26(b) provides general provisions regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Discovery rules are to be accorded broad and liberal construction. *See Herbert v. Lando,* 441 U.S. 153, 177 (1979); and *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Nevertheless, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 929 (4th Cir. 1995); *Erdmann v. Preferred Research, Inc. of Georgia,* 852 F.2d 788, 792 (4th Cir. 1988).

Professors Greer and Rhodes seek complete responses to Interrogatories 2 and 3 which state the following:

> 2. By page and line number, identify each portion of any work identified in response to Interrogatory No. 1 that constitutes the original authorship of Olivares.[2]
>
> 3. By page and line number, identify each portion of The Greer/Rhodes Work that constitutes the original authorship of Olivares.

(Ex. 1, Docket Entry 59-2.) In his original response, Professor Olivares objected and later provided a supplemental response to Interrogatory No. 2:

> Plaintiff objects that Defendants are attempting to have Plaintiff marshal his case while discovery still proceeds. Plaintiff further objects to Defendants attempting to require Plaintiff to use "page and line number," as page and line number has nothing to do with infringement. Plaintiff further objects to this interrogatory because it seeks attorney work product. Plaintiff has specifically identified the sections of the infringing work by Greer and Rhodes that infringe Plaintiff's copyrighted work.
>
> After a conference of counsel on June 12, 2015, Plaintiff agrees to further supplement by providing that Plaintiff believes the entire novel to be a rework

---

[2] Interrogatory No. 1 states: "Identify each copyrighted work on which your copyrightable infringement claim is based." (Ex. 1, Docket Entry 59-2.)

> of a masterpiece that never existed before being created by Julian Olivares. The plaintiff revised the 1637 2nd ed. of Zaya's Novelas amorosas y exemplars, thus creating an original text previously unpublished. He also introduced corrections to the 1637 2d ed. base text (N) from the 1637 1st ed., *princips* (P), and the second 1638 ed. (H).

(Ex. 1, Docket Entry 59-2) (emphasis in original). As to Interrogatory No. 3, Plaintiff's response states:

> Plaintiff objects to this interrogatory as it is vague, ambiguous and nonsensical. Plaintiff further objects that Defendants are attempting to have Plaintiff marshal his case while discovery still proceeds. Plaintiff further objects to Defendant attempting to require Plaintiff to use "page and line number," as page and line number has nothing to do with infringement. Plaintiff further objects to this interrogatory because it seeks attorney work product. Plaintiff has specifically identified the sections of the infringing work by Greer and Rhodes that infringe Plaintiff's copyrighted work.
>
> After a conference of counsel on June 12, 2015, Plaintiff agrees to further supplement by providing the chapters or sections of his novel infringed by Defendants: All pages and line numbers of Greer/Rhodes translations of "Al que leyere" > "To the Reader"; "Prólogo de un desapasionado" > "Prologue by a Disinterested Person"; "Introducción" > "Introduction"; "Aventurarse perdiendo" > "Taking a Chance on Losing"; "Noche segunda" > "Second Night"; "El prevenido enganado" > "Forewarned but Fooled"; "Noche quinta" > "Fifth Night"; "El juez de su causa" > ["] The Judge of Her Own Case." Plaintiff reserves the right to supplement or amend this response.

(*Id.*)

Defendants Greer and Rhodes contend that Plaintiff's responses are insufficient,[3] mainly because Professor Olivares' book "contains work that [he] does not even claim to have created" and that Professor Olivares' "edition consists largely of text written centuries ago by María de Zayas y Sotomayor." (Defs.' Mot. at 4, Docket Entry 59.) Defendants further contend that Professor Olivares only has "exclusive rights in his original, creative

---

[3] In a supplemental brief, Defendants further assert that Professor Olivares' deposition is further indication that his interrogatory responses are insufficient. (Docket Entry 95.)

4

contribution (if any)," and "no exclusive rights in Zayas' original text," thus Professor Olivares should distinguish between his contributions and that of the original Zayas text. (*Id.* at 4, 6.) Plaintiff contends that Interrogatories 2 and 3 do not ask for such information, thus "Olivares cannot be ordered to answer interrogatories that were not asked." (Pl.'s Resp. Br. at 3, Docket Entry 63.) Professor Olivares further contends that he has answered the interrogatories by identifying his entire work. (*Id.*)

To establish copyright infringement, "a plaintiff must prove that it possesses a valid copyright and that the defendant copied elements of its work that are original and protectable." *Copeland v. Bieber*, 789 F.3d 484, 488 (4th Cir. 2015). "The copyright in a compilation or *derivative work* extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b) (emphasis added). In part, derivative work is defined as "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship." 17 U.S.C. § 101 at definition for "derivative work." The interrogatories seek information regarding Plaintiff's originality, which is the crux of Plaintiff's copyright claim. *Darden v. Peters*, 488 F.3d 277, 286 (4th Cir. 2007) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("A work must be original to be copyrightable; indeed, the '*sine qua non* of copyright is originality.'")). At this stage, the Court finds Plaintiff's supplemental responses to be sufficient based upon the questions posed in the interrogatories. Plaintiff identifies his entire novel as original authorship, and identifies chapters and sections of his novel alleged to be infringed upon by Defendants. Professors

5

Greer and Rhodes may disagree with Plaintiff's response, but the Court finds that Professor Olivares did fairly answer the interrogatories in his supplemental response.[4] Thus, the Court need not address Plaintiff's original objections to the interrogatories. Defendants' motion to compel is denied.

III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' motion to compel (Docket Entry 59) is **DENIED**.

/s/ Joe L. Webster
United States Magistrate Judge

January 11, 2016
Durham, North Carolina

---

[4] Defendants rely upon several cases, particularly *Computer Associates Int'l, Inc. v. Quest Software, Inc.*, No. 02 C 4721, 2003 WL 22159022, at *2 (N.D. Ill. Sept. 17, 2003), to argue that Plaintiff must specifically disclose which elements he believes are copyrighted and infringed. The district court in that case held, "[I]n order to allow defendants to adequately prepare a defense,[the] plaintiff must, at some point, specifically disclose the elements of source code it believes were copied and state why it believes those elements were protected by law." (*Id.*) In response, Plaintiff relies upon the same case which stated that it "find[s] no authority in support of [defendants'] argument." (*Id.*) This Court finds *Computer Associates* unhelpful in light of the nature of the copyright claim before the Court.