IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JULIÁN OLIVARES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-713 |
| | ) | |
| UNIVERSITY OF CHICAGO, | ) | |
| UNIVERSITY OF CHICAGO PRESS, | ) | |
| MARGARET R. GREER, and | ) | |
| ELIZABETH RHODES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Julián Olivares ("Olivares") initiated this copyright infringement action in the United States District Court for the Eastern District of Texas in October 2014. The case was subsequently transferred to this Court. Before the Court are several motions filed by Defendants, including a motion for summary judgment, various motions to dismiss, and a motion to strike Olivares' request for statutory damages and attorney's fees. Also before the Court are Olivares' requests for hearings on all pending motions. For the reasons below, Defendants' Motion for Summary Judgment as to Olivares' copyright infringement claim is denied; Defendants' motions to dismiss claim two regarding infringing acts abroad and the Texas state-law tort claims are granted; Defendants' motion to strike Olivares' requests for statutory damages and attorney's fees is granted; and Defendants' motion to dismiss or transfer

for lack of jurisdiction and venue is denied as moot.  In addition, Olivares' requests for hearings are denied.[1]

## I.  BACKGROUND

In 1637, Spanish writer María de Zayas y Sotomayor ("Zayas") published a collection of ten stories titled *Novelas amorosas y ejemplares* ("*Novelas amorosas*").  (*See* Rhodes Decl. ¶ 7, ECF No. 34-2; Greer Decl. ¶ 13, ECF No. 34-3.)  In 2000, Olivares created an edition of the *Novelas amorosas*, also in Spanish.  (Olivares Decl. ¶ 3, ECF No. 44-28.)  Olivares' edition contains the entire text of the *Novelas amorosas*, as well as several sections written by Olivares.[2]  (*See* Olivares Ed., ECF No. 1-2.)  In 2009, Defendant University of Chicago published an English translation of selected stories by Zayas, including four stories from the *Novelas amorosas*.  (*See* Rhodes Decl. ¶ 7, ECF No. 34-2; Greer Decl. ¶ 13, ECF No. 34-3.)  The stories were edited and translated by Defendants Margaret R. Greer ("Greer") and Elizabeth Rhodes

---

[1] Also before the Court is a motion that Defendants filed in the Eastern District of Texas and moved to reinstate in this Court.  The motion challenges personal jurisdiction and venue in the Eastern District of Texas.  The Court will not address this motion as to these issues, which became moot when the Eastern District of Texas transferred the case on convenience grounds.  *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1352 (3d ed.) ("The transfer of the case [pursuant to § 1404(a)] will render moot any Rule 12(b)(3) motion to dismiss for improper venue.").  Contrary to Defendants' argument, the propriety of jurisdiction and venue in the Eastern District of Texas has no bearing on whether this Court must apply Fourth Circuit or Fifth Circuit law.  "[F]ederal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case."  Desiano v. Warner-Lambert & Co., 467 F.3d 85, 91 (2d Cir. 2006) (quoting Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993)) aff'd sub nom. Warner-Lambert Co., LLC v. Kent, 128 S. Ct. 1168 (2008).  This Court will accordingly proceed under the precedent of the Fourth Circuit.  *See* Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1223 (11th Cir. 2008); Newton v. Thomason, 22 F.3d 1455, 1460 (9th Cir. 1994); Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1138 (5th Cir. 1992).

[2] Sections by Olivares include an introduction, note on his edition, bibliography, glossary, index of names, and index of poems.  (*See* Olivares Ed. 7–8, ECF No. 1-2 (table of contents).)  These sections of the Olivares edition do not appear to be at issue in this case.

("Rhodes"). (See Greer & Rhodes Translation, ECF No. 109-7 (book cover).) When translating stories from the *Novelas amorosas*, Greer and Rhodes used Olivares' edition of Zayas' work. (Id. at 41 (note on the translations).) Their use of Olivares' edition forms the basis of the parties' dispute.

Olivares asserts four claims: (1) copyright infringement under federal and foreign law, (2) violations of the Universal Copyright Convention, (3) unjust enrichment, and (4) money had and received. While this case was before the Eastern District of Texas, Defendants moved to dismiss each claim except Olivares' copyright infringement claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. They also moved to strike Olivares' requests for statutory damages and attorney's fees. After the case was transferred to this Court, those motions were reinstated, and Defendants filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure as to all claims.

Though Defendants seek summary judgment on all of Olivares' claims, they devote the majority of their summary judgment brief to the copyright infringement claim. For the remaining claims, Defendants direct the court to the parties' earlier briefing related to their motions to dismiss. (See Defs.' Mot. 19–20, ECF No. 109.) Because the parties' earlier briefing does not present matters outside the pleadings and all of the parties' arguments on these issues are made in the Rule 12(b)(6) context, the Court will evaluate Olivares' claims for violations of the Universal Copyright Convention, unjust enrichment, and money had and received pursuant to Rule 12(b)(6) for failure to state a claim. The Court will evaluate Olivares' claim for copyright infringement under a Rule 56 summary judgment standard.

## II.    MOTIONS TO DISMISS

Defendants move to dismiss Olivares' claims for unjust enrichment, money had and received, and violations of the Universal Copyright Convention.  A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is plausible when the complaint alleges facts that "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.  Where the facts are "merely consistent with" the defendant's liability or allow the court to infer only "the mere possibility of misconduct," the complaint "stops short of the line between possibility and plausibility" and must be dismissed.  Id. at 678–79; see Twombly, 550 U.S. at 557.

## A. Violations of the Universal Copyright Convention

In his claim for violations of the Universal Copyright Convention, Olivares alleges that Defendants infringed his international copyrights by distributing and selling their translation outside the United States. (Third Am. Compl. ¶¶ 38–39, ECF No. 27.) The Universal Copyright Convention is a treaty that "mandate[s] a policy of national treatment in which copyright holders are afforded the same protection in foreign nations that those nations provide their own authors." Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 700 (9th Cir. 1995); see Universal Copyright Convention art. II, reprinted in 9 Melville B. Nimmer & David Nimmer, Nimmer on Copyright App. 24.

Defendants argue that the Universal Copyright Convention is not self-executing and does not give rise to a private cause of action. The Court agrees. "International treaties are not presumed to create rights that are privately enforceable." Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 968 (4th Cir. 1992). Rather, "[t]o determine whether a treaty creates a cause of action, we look to its text." McKesson Corp. v. Islamic Republic of Iran, 539 F.3d 485, 488 (D.C. Cir. 2008). Olivares does not identify specific text in the Universal Copyright Convention which creates a private cause of action, and the Court finds no such language. Accordingly, the Court dismisses Olivares' claim for violations of the Universal Copyright Convention pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

## B. State Law Claims

Olivares also asserts two state law claims, *i.e.*, unjust enrichment and money had and received. In his claim for unjust enrichment, Olivares alleges Defendants have obtained

revenue from sales of their translation that would be unconscionable for them to retain. (Third Am. Compl. ¶ 48, ECF No. 27.) In his claim for money had and received, Olivares alleges that Defendants' revenue "in equity and good conscience" belongs to him. (Id. ¶ 52.)

Defendants move to dismiss Olivares' state law claims based on Copyright Act preemption. The Copyright Act preempts all state law rights that are "equivalent" to rights under federal copyright law. 17 U.S.C. § 301(a). The scope of preemption is extensive. See Pan-Am. Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 690–91 (M.D.N.C. 2011) (stating that the "shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection" (alteration in original) (quoting U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997))).

To determine whether a state law claim is preempted, courts must consider (1) whether the work falls "within the subject matter of copyright," and (2) whether the claim protects rights "that are equivalent to any of the exclusive rights within the general scope of copyright." Id. (quoting 17 U.S.C. § 301(a)); U.S. ex rel. Berge, 104 F.3d at 1463. Both prongs must be satisfied for preemption to apply. Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 309 (4th Cir. 2012). The first prong, relating to subject matter, is easily satisfied in this case. Both of Olivares' state law claims relate to his edition of Zayas' *Novelas amorosas*, which falls within the subject matter of copyright law as a derivative work. Derivative works are defined as works "based upon one or more preexisting works." See 17 U.S.C. § 101. Because Olivares' edition is based upon Zayas' *Novelas amorosas,* it is evaluated as a derivative work, leaving only the second prong, relating to equivalency, as the only prong at issue in this case.

6

Under the equivalency prong of the preemption analysis, Olivares' claims are preempted if they are equivalent to the exclusive rights that the Copyright Act grants to copyright owners.  See 17 U.S.C. § 301(a).  These exclusive rights include the rights to (1) reproduce the work, (2) prepare derivative copies based on the work, (3) distribute copies of the work, (4) perform the work publicly, (5) display the work publicly, and (6) in the case of a sound recording, perform the work publicly by means of a digital audio transmission.  17 U.S.C. § 106.  To assess equivalency, the Fourth Circuit applies the "extra element" test.  Rosciszewski v. Arete Assocs. Inc., 1 F.3d. 225, 229–30 (4th Cir. 1993).  Under this test, the Court must refer to the elements of the state law claims, not the conduct or facts pled.  Tire Eng'g, 682 F.3d at 309–10.  If an act of reproduction, preparation of a derivative work, distribution, performance, or display alone can establish the state law claim, then the claim is the equivalent of an exclusive right of the Copyright Act and there is preemption.  See Pan-American, 825 F. Supp. 2d at 691.  However, if the state law claim requires an "extra element" instead of, or in addition to, the acts of reproduction, performances, distributions or display in order to create a state cause of action, there is not preemption if that extra element transforms the nature of the action, "making it qualitatively different from a copyright infringement claim."  Tire Eng'r, 682 F.3d at 309 (internal quotation marks omitted).

## 1. Unjust Enrichment

For Olivares' claim of unjust enrichment, the Court considers the elements of the claim under both Texas law (because this case was transferred from Texas federal court) and North

Carolina law (because this Court sits in North Carolina).[3]  Under Texas law, "[a] person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage." Lee v. Lee, 411 S.W.3d 95, 111 (Tex. Ct. App. 2013).  This claim can be established by a single act of copyright infringement.  Thus, a claim of unjust enrichment under Texas law does not involve an extra element that makes the claim qualitatively different from a copyright infringement claim.  See DaVinci Editrice S.R.L. v. ZiKo Games, LLC, No. H-13-3415, 2014 WL 3900139, at *13 (S.D. Tex. Aug. 8, 2014) (dismissing a claim of unjust enrichment under Texas law as preempted).  A claim of unjust enrichment under North Carolina law requires a plaintiff to establish that "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 712 S.E.2d 670, 677 (N.C. Ct. App. 2011).  Similar to the claim of unjust enrichment under Texas law, a claim of unjust enrichment under North Carolina law can also be established by a single act of copyright infringement.  The claim therefore lacks an extra element that qualitatively differentiates it from a copyright infringement claim.  See Pan-Am., 825 F. Supp. 2d at 696 (dismissing a claim of unjust enrichment under North Carolina law as preempted).  The Court concludes that Olivares' unjust enrichment claim is preempted by the Copyright Act, regardless of whether it is asserted under Texas law or North Carolina law.

---

[3] A choice-of-law analysis is not necessary here because Olivares' claim for unjust enrichment is preempted regardless of the applicable state law. See Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 101 (4th Cir. 2013) (recognizing that the choice-of-law analysis becomes necessary only if the laws of the different states lead to different outcomes, and where they do not so conflict, the choice becomes immaterial and the court should apply the law of the forum).

### 2. *Money Had and Received*

For Olivares' claim of money had and received, the elements of the claim are substantially similar under both Texas and North Carolina law. Under Texas law, "a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him [Plaintiff]." MGA Ins. Co. v. Charles R. Chesnutt, P.C., 358 S.W.3d 808, 814 (Tex. Ct. App. 2012). Under North Carolina law, a plaintiff can maintain an action for money had and received "whenever the defendant has money in his hands which belongs to the plaintiff, and which in equity and good conscience he ought to pay to the plaintiff." Primerica, 712 S.E.2d at 676 (quoting Allgood v. Wilmington Sav. & Trust Co., 88 S.E.2d 825, 829 (N.C. 1955)). A single act of copyright infringement can satisfy the elements of a claim for money had and received, so long as the alleged infringer received money from the act of infringement. No extra element transforms a claim for money had and received into something qualitatively different from a copyright infringement claim. The claim is therefore the equivalent of an exclusive right under the Copyright Act, and the Court concludes that Olivares' claim for money had and received is preempted by the Act, regardless of whether it is asserted under Texas law or North Carolina law.

Because the Copyright Act preempts Olivares' state law claims of unjust enrichment and money had and received, the claims are dismissed pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

## III. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all of Olivares' claims though, based on the preceding discussion, his claim for copyright infringement is the only claim that remains.

9

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1); Celotex, 477 U.S. at 324.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

### A. Copyright Infringement

Olivares asserts his copyright infringement claim under the Copyright Act of 1976 and under foreign law. He claims Defendants infringed his copyright in his edition of the *Novelas amorosas* by copying and translating his edition, distributing that translation, and inducing third parties to exploit his edition. (Third Am. Compl. ¶ 20, ECF No. 27.)

The Copyright Act of 1976 grants copyright protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). "[O]riginality is usually considered a question of fact." Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 722 F.3d 591, 595 n.9 (4th Cir. 2013).

An author who creates an original work enjoys "a bundle of exclusive rights." A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 636 (4th Cir. 2009) (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 546 (1985)). These include the rights to (1) reproduce the work, (2) prepare derivative copies based on the work, (3) distribute copies of the work, (4) perform the work publicly, (5) display the work publicly, and (6) in the case of a sound recording, perform the work publicly by means of a digital audio transmission. § 106. Violation of any exclusive right constitutes copyright infringement. See § 501(a). "To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright." Humphreys

& Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 537 (4th Cir. 2015) (quoting

Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001)).

In seeking summary judgment on Olivares' copyright infringement claim, Defendants challenge the validity of Olivares' copyright. Notably, their challenge extends only to Olivares' copyright in his corrections to Zayas' text, not to his copyright in his edition as a whole. This is based on their understanding that Olivares claims Defendants infringed his rights in only one section of his edition, the section containing the text of Zayas' *Novelas amorosas*.[4] (See Defs.' Mot. 7, ECF No. 109.) Olivares does not allege that Defendants infringed his rights in any of the sections of his edition that he wrote himself.[5] Thus, the Court will consider only Olivares' copyright in the text of the *Novelas amorosas* as published in his edition.

To create his edition of the *Novelas amorosas*, Olivares referenced several early editions of Zayas' work, including two editions published by Zayas and two editions he describes as "pirated." (See Olivares Decl. ¶¶ 7–10, ECF No. 110-7.) Olivares began by conducting a line-by-line comparison of the various editions and "noting all the variants and problematic areas that needed clarification." (Id. ¶ 9.) Following this comparison, Olivares transcribed Zayas' second edition of the *Novelas amorosas*. (Id. ¶ 10.) He then made changes to the punctuation

---

[4] "Olivares' book consists of the text of Zayas' *Novelas amorosas*, along with Olivares's footnotes and commentary on that text. Olivares does not claim that any of his footnotes or commentary were used by Defendants." (Defs.' Mot. 7, ECF No. 109.)

[5] Olivares argues that "Greer used Olivares's introduction, which added bibliographic reference to other person[s'] readings of Zayas's texts and included his subjective interpretations of those texts." (Pl.'s Opp'n 4, ECF No. 110.) He bases this argument on a statement by Greer that she "didn't use [Olivares' introduction] a great deal." (Greer Dep. at 63:18–25, ECF No. 110-6.) This does not amount to an allegation that Defendants translated his introduction or otherwise infringed his copyright in his introduction. Indeed, in his deposition, Olivares stated he did not think Greer and Rhodes copied any of his introductory material. (See Olivares Dep. at 262:8–11, ECF No. 109-2.)

and paragraph breaks, annotated the variants between the editions, and made corrections to the text. (See id.) Because Olivares' edition is based upon Zayas' *Novelas amorosas*, it is a derivative work. See § 101. Thus, Olivares' copyright in his edition extends only to the material he contributed, not to the material he copied from Zayas. See § 103(b). In addition to the consideration of what Olivares contributed, the originality requirement of copyright law also considers whether those contributions possess "at least some minimal degree of creativity." Feist, 499 U.S. at 345. Thus, Olivares' copyright extends only to material that (1) he contributed and (2) meets the minimal creativity threshold.

Defendants contend Olivares' corrections to Zayas' text constitute "the only material he contributed." (Defs.' Mot. 7, ECF No. 109.) They then argue that his corrections—specifically, his changes to Zayas' punctuation and paragraph breaks—are not copyrightable. (Id.) Though Olivares does not expressly agree that his corrections to Zayas' text are the only material he contributed to her text, he also does not contradict Defendants' contention. He disputes, however, the copyrightability of his corrections. (See Pl.'s Opp'n 3–5, ECF No. 110.) He acknowledges that the "'originality' ground actually reduces to 'minimal creativity.'" (Id. at 3.) Thus, the validity of Olivares' copyright comes down to whether his corrections to Zayas' text are minimally creative, and the propriety of summary judgment depends on whether there is a genuine dispute over the creativity question.

In the creativity inquiry, the Supreme Court has explained that "the requisite level of creativity is extremely low; even a slight amount will suffice." Feist, 499 U.S. at 345. The Court observed that "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." Id. (quoting 1

13

M. Nimmer & D. Nimmer, Copyright § 1.08[C][1] (1990)). Here, the parties agree that Olivares' corrections to Zayas' text include changes to the punctuation and paragraph breaks; rather, they disagree as to whether these corrections are sufficiently creative to merit copyright protection. (*See* ECF No. 109 at 7; ECF No. 110 at 3–5.)

Defendants argue that corrections to punctuation and paragraph breaks are not copyrightable. They direct the Court to the United States Copyright Office's manual on copyright law, which states, "Merely correcting errors in spelling, punctuation, grammar, or making other minor changes, revisions, or other modifications to a preexisting work do not satisfy [the originality] requirement." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 709.4 (3d ed. 2014). Defendants also direct the Court to Grove Press, Inc. v. Collectors Publication, Inc., in which a district court held that 40,000 revisions to the punctuation, spelling, quotation marks, and typographical errors found in a preexisting work "displayed no originality." 264 F. Supp. 603, 605 (C.D. Cal. 1967).

Defendants appear to oversimplify the corrections that Olivares made to Zayas' punctuation and paragraph breaks. If the extent of Olivares' corrections consisted of fixing proofreading errors in Zayas' work, then the Court would be more inclined to find a lack of originality. However, according to Olivares, his edition does not merely fix proofreading errors; it restores, modernizes, and clarifies Zayas' text. (Olivares Dep. at 101:12–23; 144:10–145:13, 147:15–148:6, 178:1–179:1, ECF No. 109-2; see Greer Dep. at 145:1–3, ECF No. 110-6 ("One of the things an editor of a 17th Century text does . . . is modernizing the spelling and punctuation.").) Though Zayas' editions are not in the record before the Court, the parties agree that Zayas' original text often lacks paragraph breaks and punctuation. Greer explains

14

that in Zayas' time, "manuscript authors didn't punctuate their texts carefully, maybe not at all," because they expected the printer to supply the punctuation. (Greer Dep. at 61:3–5, ECF No. 110-6.) Consequently, some of Zayas' sentences "might be a paragraph long." (Id. at 181:22.) Rhodes similarly states that in Zayas' original text, "there are no paragraphs, and the punctuation is inconsistent" in terms of whether and when there is punctuation. (Rhodes Dep. at 131:18–120, ECF No. 110-9.) Olivares explains that one of Zayas' stories was originally published as a single paragraph spanning twenty or thirty pages. (Olivares Dep. at 149:1–14, ECF No. 109-2.) He then divided that single paragraph into approximately eighty paragraphs, making the text easier to follow. (See id. at 149:8–12.) Olivares also describes that he punctuated "a very long, long sentence that was very confusing." (Id. at 239:20–23.) The Court cannot find as a matter of law that these types of revisions utterly lack creativity, as it would be required to do, to grant Defendants' summary judgment on this claim of copyright infringement.

As Rhodes explains, "different scholars will divide paragraphs differently based on how they interpret the meaning of each paragraph." (Rhodes Dep. at 131:22–24, ECF No. 110-9.) Greer agrees that how an author divides paragraphs "matters in how we read a text." (Greer Dep. at 61:13–16, ECF No. 110-6.) And while some punctuation choices are mechanical and dictated by established convention,[6] other punctuation choices have the potential to change the entire meaning of the text. (See Rhodes Dep. at 136:6–25, ECF No. 110-9.) To create an edition that is "as accurate to the sense of Zayas as possible," Greer acknowledges that

---

[6] For example, Greer testifies that the Spanish language "used to use semicolons where we use periods." (See Greer Dep. at 81:2, ECF No. 110-6.) If Olivares replaced Zayas' sentence-ending semicolons with periods, that revision reflects conformance with convention, not creative choice.

Olivares had to exercise some judgment when supplying punctuation to the original text. (Greer Dep. at 67:1–20, ECF No. 110-6.)

On the record before the Court, there is sufficient evidence for a reasonable jury to find that Olivares' corrections to Zayas' punctuation and paragraph breaks satisfy the originality requirement of copyright law. The existence of this genuine issue for trial precludes an award of summary judgment in favor of Defendants. It also eliminates the need for the Court to comprehend the full scope of Olivares' contributions to Zayas' text, which is not possible on the present record. Because a reasonable jury could find that Olivares' copyright extends to certain elements of the text of the *Novelas amorosas* that appears in his edition, Defendants are not entitled to summary judgment on the issue of copyrightability.

## B. Defenses to Infringement

Defendants next argue, in the alternative, if the Court does not grant their motion for summary judgment on the issue of copyrightability, they seek summary judgment based on their argument that the defenses of fair use and estoppel would nonetheless preclude a finding of infringement in this case. To obtain summary judgment on an affirmative defense, a defendant "must conclusively establish all essential elements of that defense." Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (considering the affirmative defense of laches in a trademark infringement case). "When the defendant has produced sufficient evidence in support of its affirmative defense, the burden of production shifts to the plaintiff to 'come forward with specific facts showing that there is a genuine issue for trial.'" Id. (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999)). However, if the defendant fails to satisfy his initial burden of producing evidence

showing he is entitled to summary judgment, then the plaintiff is not required to rebut that insufficient showing, and the court must deny summary judgment.  Id. at 299.

### 1. *Fair Use*

Defendants argue their use of Olivares' edition constitutes fair use.  "A finding of fair use is a complete defense to an infringement claim:  'the fair use of a copyrighted work . . . is not an infringement of copyright.'"  Bouchat v. Balt. Ravens Ltd. P'ship, 737 F.3d 932, 937 (4th Cir. 2013) (quoting 17 U.S.C. § 107).  The doctrine of fair use serves as "an equitable rule of reason" and calls for a case-by-case analysis.  Id. (quoting Sundeman v. Seajay Soc'y, Inc., 142 F.3d 194, 202 (4th Cir. 1998)).  Four non-exclusive statutory factors guide the fair use analysis:

1. the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. the nature of the copyrighted work;

3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; iParadigms, LLC, 562 F.3d at 637.  "These factors cannot be treated in isolation from one another, but instead must be 'weighed together, in light of the purposes of copyright.'"  Bouchat, 737 F.3d at 937 (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994)).

The fair use doctrine is an affirmative defense presenting a mixed question of law and fact.  Id.  Though Defendants present evidence relevant to fair use, their evidence includes one important omission:  a complete copy of their translation of the *Novelas amorosas*, or an

expert report detailing any instances of copying. Without such evidence, the Court's fair use analysis is constrained. The third fair use factor, for instance, requires the Court to consider "the amount and substantiality" of the portion of Olivares' work that Defendants used in their translation, in relation to Olivares' work as a whole. 17 U.S.C. § 107(3). Defendants present no evidence on this factor, only argument. Defendants argue that "the only material at issue is certain changes to punctuation and paragraph breaks," which represent "a vanishingly small amount" of Olivares' edition. (Defs.' Mot. 15, ECF No. 109.) Without sufficient evidence, however, the Court cannot evaluate whether punctuation and paragraph breaks represent the full extent of Defendants' copying, nor can the Court evaluate whether the elements copied amount to a minuscule, insubstantial portion of Olivares' work as a whole. Though the Court cannot consider any fair use factor in isolation, every factor must still be explored. See Campbell, 510 U.S. at 578. The record before the Court does not allow the Court to fully explore each factor. The Court, therefore, cannot conclude as a matter of law that Defendants' use of Olivares' edition constitutes fair use. Because Defendants have failed to carry their burden, they are not entitled to summary judgment based on the affirmative defense of fair use.

2. *Estoppel*

Defendants also argue that even if Olivares' corrections to punctuation and paragraph breaks are copyrightable, "Olivares would be estopped from asserting copyright in those changes because he gave no notice of them to the reader." (Defs.' Mot. 12, ECF No. 109.) As support, Defendants cite a Second Circuit case about a book of Dorothy Parker poems, Silverstein v. Penguin Putnam, Inc., 368 F.3d 77 (2d Cir. 2004). In Silverstein, the plaintiff

18

collected a selection of Parker's poems, made extensive copy edits ("mainly changes in punctuation, capitalization, indentation and titling, in order to standardize the text"), and published the book. Id. at 79, 83. Three years later, a publishing house published its own book of Dorothy Parker poems, which included photocopies of the poems published in the plaintiff's book. Id. at 79. The plaintiff brought suit. Id. Among his claims was a copyright infringement claim based on his copyedits to Parker's poems. Id. at 79, 83. The Second Circuit recognized that a question existed "as to whether copyediting changes of this kind are sufficiently creative to merit copyright protection." Id. at 83. However, it held that the plaintiff was estopped from asserting infringement on that basis because, even if his copyediting changes were protectable, his book did not give any notice to the reader that he had made any changes to Parker's punctuation, titling, or formatting—"let alone what those changes were"—leading reasonable readers to conclude that the plaintiff was reproducing Parker's own work. Id. Consequently, the plaintiff was estopped from asserting copyright infringement based on his copyediting changes. Id.

Defendants argue that Olivares is similarly estopped from asserting copyright infringement based on his "unmarked departures" from Zayas' work. (Defs.' Mot. 12–13, ECF No. 109.) The Court disagrees. Olivares acknowledges in his deposition that by looking at his edition, Greer and Rhodes had no way to know where he made changes to Zayas' punctuation and paragraph breaks. (See Olivares Dep. at 155:10–17, ECF No. 109-2.) In this case, however, the evidence demonstrates that Greer and Rhodes were aware that the punctuation marks and paragraph breaks in Olivares' edition reflected Olivares' work, not Zayas'. Both scholars had experience reading old texts. (Greer Dep. at 162:9, ECF No. 110-

6; <u>see</u> Rhodes Dep. at 141:4–6, ECF No. 110-9.)  They understood that in creating an edition

of an old text, the standard practice in the field was to transcribe all the words and modernize

the spelling and punctuation.  (Greer Dep. at 66:21–23, ECF No. 110-6; <u>see id.</u> at 151:16–19

("One transcribes the words, and then, he presumably . . . would have modernized the spelling

and the punctuation.").)  Further, by the time they began the translations, both scholars were

deeply familiar with Zayas' work.  Rhodes was working on a book about Zayas at the time,

(Rhodes Dep. at 146:4–5, ECF No. 110-9), and Greer had worked so extensively with Zayas'

original texts over the previous ten years that she "could almost recite parts of them at times,"

(Greer Dep. at 63:8–9, 67:2–3, ECF No. 110-6).  While translating, Greer and Rhodes did not

seek to follow Olivares' punctuation.  (Rhodes Dep. at 131:8–14, ECF No. 110-9.)  Rhodes

translated the text "straight through with no paragraphs," and then later divided the

paragraphs where she felt was appropriate.  (<u>Id.</u> at 132:25–133:3.)  Greer punctuated as she

translated.  (Greer Dep. at 137:13–14, ECF No. 110-6.)  Sometimes her punctuation of the

English sentence coincided with Olivares' punctuation; other times, it did not.  (<u>Id.</u> at 137:14–

18.)  In any event, she understood that she was translating Zayas' words but recognizes that

"[i]t may not be her punctuation, because that would have been supplied by whatever edition"

was before her.  (<u>Id.</u> at 113:3–5.)  Indeed, in describing Olivares' edition, she acknowledges

that "the punctuation is different."  (<u>Id.</u> at 154:21.)  In the "Note on the Translations" that

appears in Defendants' book, Greer and Rhodes explain that they "occasionally alter[ed]"

Olivares' punctuation and paragraph divisions to help make long sentences understandable.

(Greer & Rhodes Translation 41, ECF No. 109-7.)  The evidence clearly shows that Greer and

Rhodes were aware that the punctuation and paragraph breaks in Olivares' edition were not

the work of Zayas, and they were not led to believe otherwise. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 59 (1984). Here, there was no injustice. Defendants are therefore not entitled to summary judgment based on a theory of estoppel.

### C. Copyright Infringement under Foreign Law

Given the genuine dispute as to whether Olivares' copyright extends to the elements of his work that Defendants allegedly infringed, and given Defendants' failure to prove their asserted defenses of fair use and estoppel, the Court denies Defendants' request for summary judgment on Olivares' claim of copyright infringement. Further, this denial of summary judgment extends to Olivares' entire copyright infringement claim, which includes allegations of infringement under both federal law and foreign law, because Defendants advance the same arguments for both parts of the claim.[7] (See Defs.' Mot. 19, ECF No. 109.)

## IV. MOTION TO STRIKE

The Court next turns to Defendants' motion to strike Olivares' requests for statutory damages and attorney's fees, as barred by the Copyright Act. Defendants do not indicate whether they seek to strike under Rule 12(f), Rule 12(b)(6), or some other rule of the Federal Rules of Civil Procedure. The Court will therefore evaluate their motion under the Rule 12(b)(6) standard for failure to state a claim upon which relief can be granted. See Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (stating that a motion

---

[7] Specifically, Defendants argue that the Court should decline to exercise supplemental jurisdiction after dismissing Olivares' remaining claims, and that in any event, summary judgment is warranted on the foreign law claim based on the same arguments as the copyright infringement claim under the Copyright Act. (Defs.' Mot. 19, ECF No. 109.)

to strike damages claim is "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion").

By statute, statutory damages and attorney's fees are not available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). Thus, three dates are relevant in determining whether Olivares is eligible for an award of statutory damages and attorney's fees: (1) the date Olivares first published his edition of the *Novelas amorosas*, (2) the effective date of Olivares' copyright registration, and (3) the date of Defendants' alleged infringement. Only if the alleged infringement occurred after publication and registration would Olivares be eligible for statutory damages and attorney's fees. That is not the case here. Olivares first published his edition in 2000 and registered his work in 2014. (Copyright Registration, ECF No. 109-12.) Defendants published their translation in 2008. (Greer Dep. at 65:15–16, ECF No. 110-6.) Thus, any infringement necessarily occurred before the effective date of Olivares' copyright registration. Statutory damages and attorney's fees are therefore not available in this case. Olivares disagrees, based on an argument that his copyright was registered in Spain prior to the alleged infringement. However, he has not cited any statutory language or case law—and the Court finds none—suggesting that a foreign copyright registration can be used as a basis to obtain statutory damages and attorney's fees under the Copyright Act. Accordingly, the Court grants Defendants' motion to strike, and dismisses Olivares' requests for statutory damages and attorney's fees pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (ECF No. 109) is DENIED, specifically as to Olivares' copyright infringement claim.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Claim Two, Regarding Infringing Acts Abroad (ECF No. 34 at 21–22) and Defendants' Motion to Dismiss Texas State-Law Tort Claims as Preempted (ECF No. 34 at 22–26) are GRANTED. Plaintiff's claims for "Violations of Universal Copyright Convention," "Unjust Enrichment," and "Money Had and Received" are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Requests for Statutory Damages and Attorneys' Fees (ECF No. 34 at 26–28) is GRANTED. Olivares' requests for statutory damages and attorney's fees are STRICKEN from the Third Amended Complaint.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss or Transfer for Lack of Jurisdiction and Venue in the Eastern District of Texas (ECF No. 34 at 3–14) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's Unopposed Request for Hearing on Defendants' Pending Motions (ECF No. 100) and Plaintiff's Request for Hearing on Defendants' Motion for Summary Judgment (ECF No. 113) are DENIED.

This, the 30th day of September, 2016.


                               ___/s/ Loretta C. Biggs___
                                United States District Judge